DA 10-0398

FILED

June 1 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 116

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DAVID C. JOHNSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 08-545
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Matthew M. Wilcox,
Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; Mark W. Mattioli,
Assistant Attorney General; Helena, Montana

            Fred R. Van Valkenburg, Missoula, County Attorney; Missoula,
Montana

            Roberta Cross Guns, Special Deputy Missoula County Attorney,
State Auditor's Office; Helena, Montana

                         Submitted on Briefs:  March 8, 2011

                                   Decided:  June 1, 2011

Filed:

               _____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 David C. Johnson (Johnson) appeals the District Court's restitution order based on the State's failure to submit sworn victim affidavits as required by § 46-18-242(1)(b), MCA.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Johnson was licensed by the Montana Insurance Department as a life and disability insurance producer. The State Auditor's Insurance Department investigated Johnson following claims that he was transferring his clients' annuities without fully disclosing the penalties and financial consequences of the transfers. Johnson admitted to taking loans from his clients that he did not return, transferring annuities without full disclosure of penalties and financial consequences, and earning a commission for every transaction.

¶3 On July 21, 2009, Johnson entered a plea agreement in which he agreed to plead guilty to two counts of felony theft in violation of § 45-6-301(8), MCA, and to pay restitution for the loss incurred as a result of his fraudulent acts. Johnson agreed to make full restitution with respect to loans he took from the victims, and does not challenge that portion of the restitution order on appeal. With respect to the annuity transfers, the amount of restitution was not set forth in the plea agreement. Rather, the plea agreement provided: "[t]he parties will continue to negotiate the amount due on such restitution between the time of entry of plea and sentencing but agree that if they are unable to reach agreement, the court shall conduct a restitution hearing to determine the amount of restitution due." On September 15, 2009, a pre-sentence investigation report (PSI) was

2

completed. The PSI did not contain a precise restitution figure and stated, "[a]ccording to the plea agreement restitution has yet to be determined."

¶4 Following the parties' failure to reach agreement on the amount of restitution, and in accordance with the plea agreement, the District Court set an evidentiary hearing to determine restitution. The court directed the parties to file proposed findings of fact and conclusions of law in advance of the hearing, along with detailed trial briefs supporting their legal arguments. Johnson's prehearing brief noted the disagreement between the parties as to whether any of the victims "suffered a loss as a result of an annuity transfer." He acknowledged he did not anticipate the State would produce victim affidavits and stated he "does object to the award of restitution absent an affidavit *or evidence* in this matter in [sic] regarding the annuities." (Emphasis added.) Johnson agreed the law allowed restitution for anyone suffering a pecuniary loss as a result of the offense, but questioned whether "any insurable losses" had occurred in this matter.

¶5 On January 28, 2010, the court held a hearing on restitution. The State did not present sworn affidavits or testimony from any of the elderly victims at the hearing. The State provided excerpts from the victims' financial portfolios as well as expert testimony from Lynne Egan (Egan), Deputy Commissioner of Securities for the State Auditor's Office. Egan explained the Securities Division's net economic damages calculation in cases involving fraudulent annuity transfers, or what she termed "flipping annuities." As she described, annuities are long-term investments and therefore include extended surrender periods. A surrender period is a period of time during which the investor will incur significant penalties if his or her money is withdrawn. After the surrender period

3

expires, the investor may choose to annuitize by setting up a payment schedule. The investor then also has the freedom to remove some or all of his or her investment without incurring a surrender penalty.

¶6 Egan testified that different annuities have different surrender periods. As a result, the surrender penalties an investor may incur also will vary. Surrender penalties are substantial and usually serve to prohibit investors from withdrawing more money than permitted without incurring a fee. When money is removed from one annuity and put into another, as Johnson did here, the surrender period starts over under the terms of the new annuity. Johnson moved his clients' investments from one annuity to another and, in some cases, into a third annuity all within the surrender period, and substantial penalties were immediately applied to their investments.

¶7 The State contended that the victims' losses were the amounts incurred through surrender penalties. Egan determined the amount of restitution by calculating the difference between the estimated value of the investment, had it been kept in the original annuity without penalty, and the value of the new annuity as of June 30, 2009, the date originally set for Johnson's change of plea hearing.

¶8 Johnson introduced expert testimony from Keith Jakob (Jakob), Associate Professor of Finance at the University of Montana. Jakob opined that the loss incurred, if any, could be determined by comparing the value and theoretical return of the annuities at the time of Johnson's unauthorized transfer to the current value and anticipated return on the new annuities. Johnson's theory was that any loss incurred from surrender penalties should be offset by any overall gain in the value of the new annuity. Johnson supported

4

his theory with Jakob's opinion that Johnson's transfer of annuities ended up, given economic circumstances, providing an advantage to the investors who otherwise would have been transferring into new investments at a time when interest rates had decreased significantly. Despite pleading guilty to insurance investment fraud and the plea agreement to pay restitution to the elderly victims, Johnson theorized he did not owe restitution as a result of annuity transfers because the victims' annuities would experience an overall increase in value.

¶9 At the close of the hearing, the District Court postponed sentencing and ordered subsequent briefing on the principles of calculating restitution in analogous civil cases. The State argued that "the direct and measurable damage was the incursion of surrender penalties for the premature surrender of the original annuity contracts." The State's theory was one of conversion, which presumes the measure of damages to be the value of the property at the time of conversion. Johnson, however, argued that the surrender penalties needed to be offset by the bonuses or better rates of return on the new annuities. He disputed the State's claim that he had "churned" the annuities, arguing he had placed his customers in good investments with better rates of return. Johnson acknowledged, however, that despite the parties' disagreement, they had agreed to resolve the charges by plea agreement and to submit the matter of restitution on the annuities to the court. In reply to the State's brief on the measure of restitution, Johnson emphasized his position that no one suffered actual loss on the annuities and supported his argument with tables showing the values of the victims' investments before and after the annuity transfers.

5

Again, he noted the parties' agreement to "reserve *argument* on damages related to annuities." (Emphasis added.)

¶10 The District Court ultimately adopted the rationale proposed by the State and, based on Egan's testimony and calculations, ordered that Johnson pay $71,364.50 in restitution. The District Court relied in part on the reasoning in *Nesbit v. McNeil*, 896 F.2d 380 (9th Cir. 1990). In *Nesbit*, the Ninth Circuit held that the deterrent principles underlying securities law require prohibiting a fraudulent broker from profiting from increases in investment and gains in a client's portfolio, and therefore, any increase in value may not be used to offset losses when calculating the client's damages. *Nesbit*, 892 F.2d at 386.

¶11 At the time of sentencing, Johnson renewed his objection to the court's measure of restitution, which the District Court denied. Johnson also objected to an award of restitution because the PSI did not include sworn victim affidavits. On appeal, Johnson contends that without such victim affidavits, the restitution order was unlawful and the case must be remanded for correction of his sentence.

**STANDARD OF REVIEW**

¶12 We review de novo whether a district court had statutory authority to impose the sentence, whether the sentence falls within the applicable sentencing parameters, and whether the court adhered to mandates of the applicable sentencing statutes. *State v. McMaster*, 2008 MT 268, ¶ 20, 345 Mont. 172, 190 P.3d 302.

¶13 The appropriate measure of restitution is a question of law, which we review for correctness. *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, 11 P.3d 539. In reviewing a district court's findings of fact as to the amount of restitution, our standard of review is whether those findings are clearly erroneous. *State v. Hilgers*, 1999 MT 284, ¶ 6, 297 Mont. 23, 989 P.2d 866.

**DISCUSSION**

¶14 Because this Court has not previously considered the appropriate restitution measure for fraudulent investment annuity transfers, the District Court looked to other jurisdictions and adopted the rule articulated in *Nesbit*. The District Court noted, "[m]ost commonly, the courts apply remedies under tort law by awarding out of pocket damages . . . . This approach reflects tort goals of compensating the injured party for harm and returning them to the position they occupied prior to the fraud." Citing *Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir. 1980), the District Court explained that there was no reason Johnson's victims should be denied a recovery because their portfolio increased in value, either because of or in spite of the activities of the defendant. The District Court therefore concluded that any losses incurred by the victims at the time of the annuity transfers are damages the victims are entitled to recover as restitution for the offense, and declined to offset those damages by any gains in the victims' portfolios.

¶15 While Johnson does not challenge the measure of restitution on appeal, he claims that because no victim affidavits were submitted, the sentence was illegal and not supported by competent evidence. Johnson argues that without affidavits, the victims

7

were not required to prove they had sustained actual losses or to answer Johnson's claim that they had failed to mitigate their damages.

¶16 Sentencing courts are required to impose a sentence that includes payment of full restitution whenever the court finds the victim of an offense has sustained a pecuniary loss. Section 46-18-201(5), MCA. However, district courts are not authorized to order restitution until all additional statutory requirements found in §§ 46-18-241 through -249, MCA, are satisfied. *Pritchett*, ¶ 7 (citing *Hilgers*, ¶ 8). At issue in this case is the provision designed to ensure that restitution orders are based on documented evidence of the victim's loss. Section 46-18-242(1)(b), MCA, provides:

> (1) Whenever the court believes that a victim may have sustained a pecuniary loss or whenever the prosecuting attorney requests, the court shall order the probation officer, restitution officer, or other designated person to include in the presentence investigation and report:
>
> . . .
>
> (b) an affidavit that specifically describes the victim's pecuniary loss and the replacement value in dollars of the loss, submitted by the victim.

¶17 In *Hilgers*, we upheld a district court's restitution order where the PSI did not contain any documentation of the victim's pecuniary loss as required by statute. *Hilgers*, ¶ 12. Hilgers had accepted a plea agreement and pled guilty to issuing bad checks, stealing cash, and diverting checks and money orders from his employer. *Id.* at ¶ 3. The plea agreement allowed the district court to decide restitution if the parties were otherwise unable to agree. *Id.* at ¶ 9. At Hilger's sentencing hearing, a Certified Public Accountant (CPA) and the victim testified as to the amount of restitution owed, but stated different amounts of loss. *Id.* at ¶ 3. Hilgers also testified to taking significantly less

8

money than either the CPA or victim calculated. *Id.* The District Court ultimately relied on the restitution figure offered by the CPA. *Id.* at ¶ 4. Although we remanded the case for other reasons, we held that the District Court had substantial credible evidence to support the amount of restitution ordered. *Id.* at ¶ 12.

¶18 In *Pritchett*, we reversed a district court's restitution order because the PSI failed to provide any documentation of the victim's loss as required by statute. *Pritchett*, ¶ 13. We expressly distinguished our holding in *Hilgers* because Hilgers, unlike Pritchett, had agreed to allow the district court to determine restitution. *Id.* at ¶ 11. While both *Hilgers* and *Pritchett* involved a prior version of the statute that did not require a sworn affidavit, the statute did require the PSI to include "documentation" of the loss, "submitted by the victim." Section 46-18-242(b), MCA (2001). The defendants in both cases challenged the legality of the restitution order for lack of the required documentation.

¶19 Here, like Hilgers, Johnson signed a plea agreement explicitly allowing the District Court to determine the amount of restitution if the parties were unable to agree, and the District Court held a full evidentiary hearing to establish the amount of restitution owed. In his pre-hearing filing, Johnson argued that proof of actual loss must be substantiated by evidence in the record, but did not expressly contend that proof in this case had to come from the mouths of the victims. He filed two more briefs prior to sentencing, neither one of which referenced or objected to the absence of victim affidavits.

¶20 Johnson argues that the affidavit requirement in § 46-18-242(1)(b), MCA, may be overcome only by providing "extensive and scrutinized" victim testimony at a hearing,

9

such as the testimony provided in *McMaster*. *McMaster*, ¶ 25. However, Johnson's dispute with an award of restitution in this case was premised on his challenge to the *measure* of restitution which, as noted above, is a question of law. He did not challenge the fact that surrender penalties were incurred at the time of transfer or the amount of those penalties, but whether the penalties should be used to determine the victims' losses. Johnson did not at any time argue to the District Court that "scrutinized" testimony of the victims was required.

¶21 This Court consistently has held that "we will not put a district court in error for failing to address an issue or an argument that was not made before it." *State v. Payne*, 2011 MT 35, ¶ 39, 359 Mont. 270, 248 P.3d 842. An objection must be sufficiently specific in order to preserve it for purposes of appeal. *In re Mental Health of T.J.F.*, 2011 MT 28, ¶ 21, 359 Mont. 213, 248 P.3d 804. Except for his lone objection on the date of sentencing, Johnson did not alert the trial court to any claim that victim affidavits were required for an order of restitution in this case. His objection, however, was inconsistent with Johnson's position up to that point. His plea agreement expressly consented to the court's determination of restitution upon hearing, his own filings acknowledged the accuracy of the surrender penalty figures, and his pre-sentencing briefs stated the dispute in terms of legal argument regarding the measure of loss, which the parties had agreed to submit to the court for resolution—a ruling he does not challenge on appeal. We conclude that Johnson failed to preserve his objection to the PSI's omission of victim affidavits.

¶22    The judgment of the District Court is affirmed.


/S/ BETH BAKER


We concur:


/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE