DA 13-0134

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 175

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

MICHAEL WESLEY SIMPSON,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DC-11-011
Honorable Laurie McKinnon, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Nicholas C. Domitrovich,
          Assistant Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
          Assistant Attorney General; Helena, Montana

          Merle Raph, Toole County Attorney; Shelby, Montana


                    Submitted on Briefs:  May 21, 2014
                             Decided:  July 8, 2014


Filed:

_____
                            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Michael Simpson appeals an order for restitution entered by the Montana Ninth Judicial District Court, Toole County, on December 13, 2012. We address the following issues on appeal:

¶2    *1. Whether Simpson preserved his objection to the award of restitution for two victims based on their lack of affidavits or testimony.*

¶3    *2. Whether the District Court's restitution order was supported by substantial evidence.*

¶4    We affirm in part, reverse in part, and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    On July 16, 2012, Simpson pleaded guilty to a single count of theft by common scheme arising from the theft of property from a salvage yard owned by Robert Appley. In exchange for the guilty plea, the State agreed to dismiss the remaining charges against him. Pursuant to the plea agreement, the State recommended a five-year commitment, suspended, to the Department of Corrections and restitution to be determined by the District Court. The agreement specifically provided that Simpson would be liable for restitution "to any victim on the charges that were dismissed pursuant this plea agreement."

¶6    The court ordered a pre-sentence investigation (PSI) in part to determine an appropriate amount of restitution. The officer completing the PSI noted that restitution had been a "nightmare" to calculate, in large part because it was difficult to determine the value of the various scrap items. The PSI calculated Appley's restitution request to be

2

$30,460.59 for the various vehicle parts and scrap metal. The PSI also included amounts for two other alleged victims of thefts Simpson had committed, Archie Johnson and Kyle Coder. Johnson requested $500 for the insurance deductible for Simpson's theft and damage of a flatbed trailer, and Coder requested $360 to reimburse him for his purchase from Simpson of a stolen Oldsmobile. Both items were recovered in Pondera County. Simpson's plea agreement resulted in dismissal of the charges for these thefts, but Simpson agreed to pay restitution for the dismissed charges.

¶7　　The District Court held a sentencing and restitution hearing on September 4, 2012. Near the end of the hearing, Simpson's counsel raised objections to the evidence presented. He disputed Appley's claimed amount of losses and argued that $8,000 would be a more appropriate amount of total restitution in this case. The court sentenced Simpson pursuant to the plea agreement on September 25, 2012. On December 13, 2012, it issued its order for restitution, ordering Simpson to pay a total of $31,878.78 to the victims. Simpson appeals the court's order for restitution.

**STANDARD OF REVIEW**

¶8　　A criminal sentence is reviewed for legality. *State v. Benoit*, 2002 MT 166, ¶ 18, 310 Mont. 449, 51 P.3d 495. "Findings of fact regarding the amount of restitution ordered as part of a criminal sentence are reviewed to determine whether they are clearly erroneous." *State v. Coluccio*, 2009 MT 273, ¶ 40, 352 Mont. 122, 214 P.3d 1282, *overruled in part on other grounds, State v. Kirn*, 2012 MT 69, 364 Mont. 356, 274 P.3d 746. A finding of fact is clearly erroneous if it is not supported by substantial evidence.

3

*City of Billings v. Edward*, 2012 MT 186, ¶ 18, 366 Mont. 107, 285 P.3d 523. Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332.

## DISCUSSION

¶9    *1. Whether Simpson preserved his objection to the award of restitution for two victims based on their lack of affidavits or testimony.*

¶10    A sentencing court is required to order an offender to pay full restitution to any victim who has sustained a pecuniary loss. Section 46-18-241, MCA. The court must comply with statutory requirements in determining an amount of restitution. *Benoit*, ¶ 23. Simpson contends that the District Court erred by ordering him to pay restitution to Johnson and Coder when the PSI did not include affidavits detailing their loss and they did not testify at the restitution hearing. He alleges that the court failed to comply with the statutory procedural requirements that a PSI include "an affidavit that specifically describes the victim's pecuniary loss and the replacement value in dollars of the loss, submitted by the victim." Section 46-18-242(1)(b), MCA. The State responds that Simpson failed to object to the amounts requested by Johnson and Coder and that he has waived his right to appeal the court's order of restitution for these two victims.

¶11    "[W]e will not put a district court in error for failing to address an issue or an argument that was not made before it." *State v. David C. Johnson*, 2011 MT 116, ¶ 21, 360 Mont. 443, 254 P.3d 578. "Above all else, the rationale underlying the

4

timely-objection rule is judicial economy and 'bringing alleged errors to the attention of each court involved, so that actual error can be prevented or corrected at the first opportunity.'" *State v. West*, 2008 MT 338, ¶ 17, 346 Mont. 244, 194 P.3d 683 (quoting *City of Missoula v. Asbury*, 265 Mont. 14, 20, 873 P.2d 936, 939 (1994)). Although the Court will review an unpreserved claim that a criminal sentence is illegal, *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one . . . ." *State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, 151 P.3d 892. In *David C. Johnson*, we affirmed a district court's restitution order despite the lack of victim affidavits where the defendant had not objected on that ground at the time of sentencing. *David C. Johnson*, ¶¶ 19-21. Soon thereafter, we reiterated that a defendant's failure to object to restitution imposed at sentencing forfeits his claim on appeal that the PSI did not contain adequate information to support a restitution award. *State v. Charley Johnson*, 2011 MT 286, ¶ 14, 362 Mont. 473, 265 P.3d 638.

¶12 Here, Simpson made a general objection at the restitution hearing to the lack of evidence presented for Appley's requested restitution. He did not object to the amounts requested by Johnson and Coder or to the basis for their awards. As we held in *David C. Johnson* and *Charley Johnson*, the District Court's alleged failure to require evidentiary support for these victim losses results in a merely objectionable sentence. Because Simpson failed to object on this ground, he has waived this issue for consideration on appeal.

¶13     *2. Whether the District Court's restitution order was supported by substantial evidence.*

¶14     A victim who sustains pecuniary loss from a defendant's criminal action is entitled to recover all special damages substantiated by evidence in the record that are recoverable in a civil action. Section 46-18-243(1)(a), MCA. Offenders are liable for restitution only for those offenses of which they have been found guilty or to which they have admitted or agreed to pay restitution. *State v. Breeding*, 2008 MT 162, ¶ 19, 343 Mont. 323, 184 P.3d 313. Even if actual losses are uncertain, they may be recoverable if they are calculated by use of reasonable methods based on the best evidence available under the circumstances. *Benoit*, ¶ 29. Reasonable methods include "a reasonably close estimate of the loss." *State v. Dodson*, 2011 MT 302, ¶ 12, 363 Mont. 63, 265 P.3d 1254 (internal citations omitted). We have held that "'[n]othing in the controlling restitution statutes . . . requires a court or a victim to substantiate a restitution calculation with documentation.'" *State v. Aragon*, 2014 MT 89, ¶ 12, 374 Mont. 391, 321 P.3d 841 (quoting *State v. McMaster*, 2008 MT 268, ¶ 29, 345 Mont. 172, 190 P.3d 302). A sentencing court accordingly may award restitution in reliance on victim testimony. *Aragon*, ¶ 14. A defendant has a due process right to "'explain, argue, and rebut any information' presented at sentencing." *Aragon*, ¶ 12 (quoting *State v. Roedel*, 2007 MT 291, ¶ 65, 339 Mont. 489, 171 P.3d 694). When a Defendant does not present contradictory evidence, the District Court does not err in relying on a victim's estimates of loss. *Dodson*, ¶ 14.

¶15 Simpson challenges the court's calculation of restitution for Appley, asserting that its calculations were not supported by substantial evidence in the record. He also objects to the court's reliance on Appley's estimates of loss. We address each specific argument in turn.

### a. Total weight of the scrap metal

¶16 The District Court ordered Simpson to reimburse Appley for the cost of fourteen tons of scrap metal, amounting to $2,800.00 in damages. Simpson argues that the evidence in the record does not support the allegation that he stole this much scrap metal. Simpson points to receipts obtained from Pacific Steel and Recycling, attached to the PSI, which account for only approximately seven tons of scrap metal.

¶17 To support its findings regarding the amount of scrap metal, the District Court relied on Appley's testimony that he had ten tons of scrap located in one area of the property and four tons in another area. Appley testified as to the items that were missing from the two locations. He also completed a lengthy hand-written affidavit of these items, which was attached to the PSI. The officer who completed the PSI testified that the receipts from Pacific Steel and Recycling were from the Pondera County Attorney's initial investigation and that they may be incomplete. Later, when she was compiling the PSI, the officer was unable to obtain any records from Pacific Steel because of the amount of time that had passed. Additionally, although law enforcement's initial investigation revealed that Simpson also scrapped metal at another recycling plant, there are no receipts from that center included in the PSI.

7

¶18 "'The credibility of witnesses and the weight to be given their testimony are determined by the trier of fact, whose resolution of disputed question of fact and credibility will not be disturbed on appeal.'" *State v. Heath*, 2004 MT 126, ¶ 52, 321 Mont. 280, 90 P.3d 426 (quoting *State v. Hilgers*, 1999 MT 284, ¶ 12, 297 Mont. 23, 989 P.2d 866). Here, the District Court chose to believe Appley's assessment of how much scrap iron was on his property and awarded him that amount rather than a reduced amount tied solely to the receipts attached to the PSI. Simpson does not support his contention that the attached receipts establish conclusively how much scrap iron Simpson stole from Appley's property. The District Court acted within its discretion in relying on Appley's testimony. The District Court's determination of how much restitution to award for the scrap iron is not clearly erroneous.

### b. Other parts

¶19 Simpson next disputes the court's order of restitution for $400 in miscellaneous parts. Again, the District Court relied largely on Appley's testimony to determine the value of loss for these items. Appley testified that he had parts in a shed that were taken by Simpson, including some "bell housings and transmissions." A court may use reasonable methods to calculate restitution, including estimates, if it is reasonable under the best evidence available under the circumstances presented. *Benoit*, ¶ 29. Simpson argues that Appley's request of $400 for these items was nothing more than complete guess work. Although there was confusion at the hearing when discussing the miscellaneous parts, Appley testified as to what was missing and, as written in his

8

inventory, estimated that the missing items were worth $400. The District Court is in the best position to judge the credibility of witnesses and weigh the evidence before it. *Heath*, ¶ 52. Appley's testimony and inventory attached to the PSI comprise sufficient evidence to support the $400 in restitution for the miscellaneous parts. We do not find clear error in this portion of the District Court's order.

### c. Radiators

¶20 Simpson next disputes the court's imposition of restitution for the radiators stolen from vehicles in Appley's yard. Simpson first argues that he did not take the radiators. The charging documents specifically list radiators as items stolen from Appley. The District Court sentenced Simpson pursuant to a plea agreement in which he agreed to pay restitution for losses related to any of the charges against him. Although Simpson disputes the number of radiators he stole, the District Court was entitled to reject his testimony. Imposing restitution for the radiators was proper. *Breeding*, ¶ 19.

¶21 Alternatively, Simpson alleges that the court did not have sufficient evidence to calculate the worth of the radiators to be $7,420.70. The District Court relied on Appley's testimony in conjunction with receipts attached to the PSI from Appley's car repair business. Simpson argues that Appley's receipts were an improper tool for calculation because they included the cost of removing the radiator from the vehicle, which was already done. Appley testified to the necessity for the labor cost at the hearing, stating that when Simpson took out the radiators, he caused damage to the inside of the vehicles, making it more difficult to replace the radiators. Again, the District Court

9

weighed the evidence before it and chose to believe Appley's estimate over Simpson's objections. Simpson does not point to more reliable or accurate information in the record that the District Court ignored. The District Court relied on testimony from Appley, who works in car repairs, and the documentation that he provided. We conclude that there is sufficient evidence in the record to support the District Court's order for $7,420.70 in radiator replacement costs.

### d. Road repairs

¶22 Simpson next disputes the cost for repair of Appley's road. The District Court found that Simpson severely damaged the half-mile driveway to Appley's salvage yard when he attempted to haul the stolen goods out in muddy conditions. The court ordered Simpson to pay $9,000 for repair of the road. The court based this amount on testimony from Appley and from Sam Nickol, an independent contractor who gave an estimate on repairing Appley's road. Nikol's estimate also is attached to the PSI.

¶23 Simpson argues that this order for restitution provides a windfall to Appley by improving the road beyond the condition it was in before Simpson damaged it. Simpson points to Appley's testimony that the road was only a dirt road, arguing that the amount of restitution will result in upgrading "what was essentially a dirt path" into an improved gravel road. Simpson also testified as to his opinion that the amount of gravel in the estimate was unnecessary to improve the road. Nikol contradicted Appley's statement that the road was only a dirt road, stating "Whether or not [Appley] remembers it, there's been truckloads of gravel dumped in mud holes and that kind of stuff on and on and on

10

. . . . He said it was a dirt trail. Actually, it wasn't. I mean it was an access road. In order to repair that, you have to replace that to where it will stand back up." Simpson did not introduce contrary evidence of what would constitute a reasonable amount of repair. Further, a victim is entitled to recover "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243(1)(b), MCA. The State is required to submit evidence of only a "causal relationship" between an offense and damage before a defendant may be charged with paying restitution for the damage. *Jent*, ¶ 13. Here, the evidence supported the State's contention that Simpson's use of a flat-bed trailer on Appley's property caused damage to the road. The testimony and documentation in the record supports the $9,000 repair cost. We affirm the road repair cost included in the court's restitution order.

### e. Aluminum Boats

¶24 The District Court's restitution order included $500 for the value of two aluminum boats Simpson allegedly stole from Appley's property. Simpson argues that this award was improper because he was not charged with stealing the boats. Although Simpson agreed to pay restitution for charges dismissed under the plea agreement, he did not agree to pay for items that he was never charged with stealing. We have disallowed restitution for offenses that defendants have not admitted, been found guilty of or agreed to pay. *Breeding*, ¶ 19; *In re B.W.*, 2014 MT 27, ¶ 23, 373 Mont. 409, 318 P.3d 682.

¶25 The State charged Simpson with three counts of theft. The information lists the property he was accused of stealing as "radiators, scrap metal and automobile parts," and

11

"a 1951 GMC Pickup and a 1940 Oldsmobile." The charging documents include no reference to the allegedly stolen boats. Appley did not report the boats missing until approximately a month after the charges were filed against Simpson. When questioned at the hearing, Simpson denied stealing the boats. The evidence presented regarding the boats does not establish that Simpson admitted to stealing them or that he agreed to pay restitution for the loss. Accordingly, we reverse the District Court's imposition of restitution for the two aluminum boats.

### f. 1951 GMC truck

¶26 Simpson finally disputes the court's valuation of a 1951 GMC truck. The District Court included $4,000 in restitution for the truck, which Simpson admitted to having taken from the property. The court relied on Appley's testimony that he estimated that the truck was valued at approximately $4,000. Appley based his testimony on the fact that he found a similar truck, in good condition, worth $17,000. Because his truck was not in good condition, Appley opined that $4,000 was an acceptable valuation. Appley's testimony was not supported by any documentation of a similar make or model truck with the value he ascribed. Instead, the PSI author explained that she was unable to determine a specific value for the truck and found advertisements for similar trucks in good condition being sold for $2,800 and $5,000. The trucks in these advertisements appear to be in much better condition than Appley's truck. The defense included as an exhibit at the restitution hearing a picture of Appley's truck showing that it was riddled with bullet

12

holes. Appley testified that he previously had received restitution for damage to the truck from that vandalism.

¶27 Although "documentation supporting the claimed loss is not generally required," we have held that restitution is not supported by substantial evidence where the evidence before the court is conflicting and no other testimony or evidence is available to be examined or reviewed as to the discrepancy. *Aragon*, ¶ 20. Losses must be calculated by reasonable methods based on the best information available under the circumstances. *McMaster*, ¶ 28. In *Aragon*, the court was faced with two estimates for repair to a garage that the defendant damaged in a drunk-driving incident. *Aragon*, ¶ 6. The estimates were significantly different because one included the cost of repainting the house "to match the current color." *Aragon*, ¶ 18. We reversed the District Court's decision to use the more expensive estimate because there was no evidence indicating that the house needed to be painted and "[a] reasonable mind could not conclude, solely from the two estimates, that one was more appropriate than the other." *Aragon*, ¶ 19.

¶28 Here, the District Court relied on Appley's guess that his truck was worth $4,000 and ignored the prices in the advertisements included in the PSI. As in *Aragon*, the court did not give context for its decision to choose one estimate over another. A reasonable mind cannot conclude, from the competing evidence before the District Court, that Appley's evidence was more appropriate to use. Accordingly, we reverse the court's imposition of restitution for the $4,000 value of the GMC truck and remand for further factual findings to determine a proper amount of restitution for this item of property.

**CONCLUSION**

¶29 We affirm the District Court's order of restitution to Johnson and Coder because of Simpson's failure to preserve the objection he raises on appeal. We also affirm the Court's order of restitution to Appley for the value of scrap metal, road repairs, miscellaneous parts and radiators. We reverse the court's restitution to Appley for the aluminum boats and the 1951 GMC truck. We remand for further factual findings regarding the proper amount of restitution for Appley's 1951 GMC truck.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE