FILED

04/07/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0413

DA 25-0413

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 74N

THE CITY OF HELENA,

      Plaintiff and Appellee,

  v.

SKYLAR DEXTER ITTNER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. DDC-2023-402
                  Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Skylar Dexter Ittner, Self-Represented, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Rebecca Dockter, Helena City Attorney, Matthew Petesch, Assistant City Attorney, Helena, Montana

                        Submitted on Briefs:  March 18, 2026

                                  Decided:  April 7, 2026

Filed:

                           _____
                                  Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Skylar Ittner appeals pro se the October 2024 order of the Montana First Judicial District Court affirming the judgment of the City of Helena Municipal Court ordering Ittner to pay $1,254.90 in restitution.  The District Court also affirmed Ittner's July 2023 conviction on bench trial for the misdemeanor offense of Changing Lanes When Unsafe to Do So (§ 61-8-328(1), MCA), but Ittner does not appeal that aspect of the District Court's judgment.  On appeal, Ittner contends that the Municipal Court's restitution award was not supported by substantial evidence and therefore erroneous.  He also alleges that his due process rights were violated at sentencing.

**Background**

¶3    Around 4:30 p.m. on April 22, 2023, Ittner was involved in a traffic accident near the intersection of Sanders Street and Custer Avenue in Helena, Montana.  Near the intersection, Sanders is three lanes:  one heading north, one heading south, and a center lane for turning left, depending on the direction of travel.  Southbound approaching the stop light, Mark Smith occupied the center lane in a full-size pickup truck towing a 16-foot trailer loaded with lumber, preparing to turn left from Sanders onto Custer.  Ittner attempted to merge into the lane in front of Smith's truck where there was not room and collided with

Smith's 16-foot trailer. After interviewing both drivers and other witnesses and being shown Ittner's dash camera footage at the scene, the responding Helena Police officer issued Ittner a citation under § 61-8-328(1), MCA, for changing lanes when it was unsafe to do so.

¶4 Ittner pleaded not guilty and waived jury trial but demanded a bench trial on the citation. He appeared pro se and cross-examined Smith and the responding officer. Smith testified that Ittner came into his lane and crashed into his trailer, causing damage to his truck and trailer. The officer testified that eyewitness accounts corroborated Smith's version of events. The officer also testified that Ittner's car and Smith's trailer each suffered damage due to the accident, and specifically that the collision broke off the "grease caps" on the hubs of Smith's trailer wheels. Ittner testified and submitted his dash camera footage into evidence. Ittner's defense theory was that Smith was illegally travelling in the center lane before it became a left-turn lane at the intersection and that, when Ittner attempted to merge into the turn lane, Smith aggressively "closed the gap," causing the collision. The Municipal Court judge advised that she would render a decision in the coming weeks and confirmed Ittner's mailing address.

¶5 The Municipal Court issued its judgment in July 2023, finding Ittner guilty. The court mailed Ittner notice of a sentencing hearing for Monday, August 14, 2023. That day, the court reset sentencing for Monday, August 28, 2023; its order noted that Ittner had failed to appear. Three days later, Ittner filed a motion to continue sentencing and waiver of speedy trial, stating he was "unable to be in court on Mondays because of a prior and ongoing commitment with the United States government." The next day, the court reset

3

sentencing for Wednesday, August 30, 2023, at 9:15 a.m. and mailed Ittner notice. The morning of sentencing, Ittner arrived late.

¶6 Prior to Ittner's arrival, Smith testified as to his restitution claims. Smith said he was out (1) $500 for his insurance deductible; (2) $600 in two days' lost wages; (3) $88.92 in mileage calculated at the State rate; (4) $32.99 each for two "bearing buddies" (caps that cover wheel hubs to facilitate greasing) to replace those that were broken off and smashed flat in the collision; and (5) $3,242 for a new rear bumper for his truck, based on a preliminary estimate. Smith testified that the impact with Ittner's vehicle caused the load of lumber in the trailer to shift into the truck's rear bumper, damaging it. As soon as Smith offered this testimony, Ittner appeared, about 8 minutes after the start of the hearing. The judge summarized and restated Smith's testimony for Ittner and then Smith continued, restating his restitution claim. Smith clarified that he had not yet paid his insurance deductible but was going to "have to pay" it because, after contacting Ittner's insurance, Smith was notified in writing that Ittner's insurance would not cover the damages to Smith's truck.

¶7 When the judge gave Ittner an opportunity to respond to Smith's testimony or ask him any questions, Ittner stated only that Smith's insurance "wasn't paying" for damages to Ittner's vehicle "either." The judge reminded Ittner that Smith's insurance would not be expected to pay where Ittner was adjudicated at fault for the accident. Ittner "respectfully disagreed" with the court's ruling. Then, without prompting, Smith began speaking on questions Ittner had posed at the June 2023 bench trial, stating it had not occurred to him at the time of his testimony, but that, when driving a full-size pickup towing a 16-foot

4

trailer, he could not "enter a turning lane like a normal car" and "just swoop in" and that "any vehicle pulling a trailer has to enter that lane sooner."

¶8 The City prosecutor then cut off Smith, noting they should just stick to the restitution issue. The judge agreed, stating they were "not going to argue the case" after the court had already made its ruling. Ittner interrupted the judge, saying, "I've also driven a trailer at an intersection—" but was admonished not to reargue the case. When asked for further comments or questions regarding restitution or sentencing, Ittner described the damages to his vehicle and the loss of use. He also added that Smith's "aggressive driving where he didn't let me in was the actual real cause—" before the judge stopped him again, stating they were not going to reargue the case.

¶9 The Municipal Court awarded Smith $1,254.90 in restitution: $500 for the insurance deductible; $600 for lost wages; $88.92 for mileage; and $65.98 for the bearing caps. The court did not award Smith any money for damage to the truck bumper, noting that insurance was going to cover that cost. Ittner appealed his conviction and the restitution award to the District Court, which affirmed on both issues by written order on October 8, 2024.

¶10 Ittner appeals pro se, arguing that Smith's restitution claims were inflated and unsubstantiated and the court's $1,254.90 award therefore erroneous. He also argues that he was denied due process because the sentencing/restitution hearing started without him and he "lacked data to respond in real time" and because the court "suppressed" Smith's "attempted admission of fault," denying Ittner an opportunity to dispute causation of damages.

5

¶11 The State argues that Ittner failed to timely object to restitution and therefore waived any appellate review. Although Ittner frames his argument as a challenge to the sufficiency of the evidence supporting restitution, he further contends that the restitution award constitutes an illegal sentence not subject to preservation requirements. Accordingly, the threshold question is whether his challenge implicates an illegal sentence—reviewable regardless of preservation—or an evidentiary challenge to the amount of restitution, which must be preserved. A sentence is illegal if it imposes a form of punishment not authorized by statute. By contrast, challenges to the sufficiency of the evidence supporting restitution for otherwise authorized categories of loss are objectionable sentencing claims subject to the contemporaneous objection rule. *See State v. Johnson*, 2011 MT 286, ¶ 14, 362 Mont. 473, 265 P.3d 638; *State v. Simpson*, 2014 MT 175, ¶¶ 11-12, 375 Mont. 393, 328 P.3d 1144.

¶12 Here, the Municipal Court awarded restitution for an insurance deductible, lost wages, mileage, and property damage—each a category of pecuniary loss expressly contemplated by §§ 46-18-241 and -243, MCA. Ittner does not challenge the court's statutory authority to award restitution for these types of losses; rather, he challenges whether the evidence sufficiently established that the claimed amounts were incurred, substantiated, and causally connected to the offense. These are evidentiary challenges to the amount of restitution, not claims that the sentence is illegal. Accordingly, they were subject to preservation requirements.

¶13 While we sit in review of the Municipal Court as if the issues were directly appealed to this Court, we also simultaneously review the District Court's decision on appeal.

*See Hennon v. Weber*, 2025 MT 260, ¶¶ 11, 18-20, 425 Mont. 14, 579 P.3d 151. Although Ittner did not object to the restitution evidence at sentencing, we nevertheless address the merits because the District Court considered and resolved the issue on appeal and the record is sufficient for review. Our analysis should not be understood to excuse the failure to preserve such claims in the ordinary case.

¶14 Regarding restitution, we review conclusions of law de novo for correctness and underlying factual findings for clear error. A factual finding is clearly erroneous if not supported by substantial evidence. Substantial evidence is that which a reasonable mind might find sufficient to support a conclusion. *State v. O'Connell*, 2011 MT 24, ¶ 7, 362 Mont. 171, 261 P.3d 1042; *Simpson*, ¶ 8. Our review of constitutional questions, including alleged due process violations, is plenary. *State v. Villanueva*, 2021 MT 277, ¶ 23, 406 Mont. 149, 497 P.3d 586.

**The Municipal Court's Restitution Award was Supported by Substantial Evidence**

¶15 A sentencing court shall require an offender to make full restitution to any victim who has sustained pecuniary loss. Section 46-18-241(1), MCA. "Pecuniary loss" means "all special damages . . . substantiated by evidence in the record that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as . . . loss of income . . . [and] expenses reasonably incurred in attending court proceedings related to the commission of the offense" and "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243(1)(a), (b), MCA.

7

¶16 "Restitution is not criminal punishment, but a civil remedy administered by the courts for the convenience of victims." *State v. McClelland*, 2015 MT 281, ¶ 10, 381 Mont. 164, 357 P.3d 906. "When a presentence report is not requested, the court shall accept evidence of the victim's loss at the time of sentencing." Section 46-18-242(2), MCA. "The restitution amount will be upheld if calculated by use of reasonable methods based on the best evidence available under the circumstances and specific documentation is not required." *McClelland*, ¶ 10; *Simpson*, ¶ 14. "When the defendant does not present contradictory evidence, the District Court does not err in relying on a victim's estimates of loss." *McClelland*, ¶ 10; *Simpson*, ¶ 14.

¶17 Ittner argues that the $65.98 award for "bearing buddies" was unsubstantiated and inflated because Smith failed to provide "receipts or invoices" proving their replacement value and because Ittner purportedly later found the same parts for much cheaper online. Both the responding officer and Smith testified that Ittner's hitting Smith's trailer stripped and destroyed the bearing caps on the two right-side trailer wheels. Smith testified that the price for each cap was $32.99 on Amazon. Smith's uncontroverted testimony was enough to establish the value of the bearing buddies and specific documentation was not required. *McClelland*, ¶ 10; *Simpson*, ¶ 14.

¶18 Ittner also argues that the $600 lost wages award was unsubstantiated and inflated. However, § 46-18-243(1)(a), MCA, expressly includes "loss of income" and expenses reasonably incurred in attending court proceedings related to the offense. Thus, time reasonably spent attending trial and sentencing proceedings constitutes compensable pecuniary loss. Smith appeared at the June 2023 bench trial and August 2023 sentencing.

8

Smith testified that he calculated his lost wages for two days' work "on the low end" at $600. He also testified that he did not include wage-time lost appearing for the rescheduled sentencing hearing. Ittner now contends that Smith, a business owner who sets his own hours, could have worked the rest of the day both days. However, Ittner's after-the-fact assertions do not undermine the evidentiary value of Smith's uncontroverted testimony. The Municipal Court properly relied on Smith's testimony as to lost wages. *McClelland*, ¶ 10; *Simpson*, ¶ 14.

¶19 Ittner also argues that Smith was not entitled to restitution for his $500 insurance deductible because, as of sentencing, Smith had not paid the deductible, and the loss was therefore only a "speculative" and "hypothetical future obligation." Smith obtained a preliminary estimate to replace his truck bumper for $3,242. Smith testified that, before filing a claim with his own insurance, he contacted Ittner's insurance to see if they would pay for the damages to his pickup truck. Ittner's insurance refused in writing to cover any damages to Smith's truck. Smith testified that he therefore had to and would pay his $500 insurance deductible to get his truck fixed. The Municipal Court awarded restitution only for the deductible, not the total damages, because Smith's insurance would cover that cost. The $500 deductible was not a speculative or contingent loss, but a reasonably certain financial obligation arising from the damage caused by Ittner's criminal conduct.

¶20 Finally, Ittner also claims that there was no causal connection between the damage to Smith's pickup and the collision based on Smith's testimony that, upon impact, the load of lumber in the trailer shifted back into the truck's rear bumper, damaging it. Ittner attributes this damage to Smith's using a "single strap" to secure the load, ignoring that

9

Ittner was adjudicated the cause of the traffic accident in the first instance, notwithstanding his disagreement with that judicial determination.

¶21    The Municipal Court's award of $65.98 for destroyed bearing caps, $600 for two days' lost wages, and $500 for the insurance deductible was supported by substantial evidence and not clearly erroneous.

**Ittner Was Not Denied Due Process**

¶22    Ittner does not explain why he arrived late to the sentencing/restitution hearing that he specifically asked the court to reschedule, attributing his tardiness only to "a scheduling error." Ittner also does not deny that the Municipal Court fully and accurately summarized Smith's testimony upon Ittner's arrival. Nonetheless, he claims that his tardiness inhibited his ability to respond to Smith's testimony "in real time."

¶23    First, both Smith and the responding officer testified at the June 2023 trial regarding damages, including damages to Smith's truck's rear bumper and the trailer wheels' "bearing buddies." Based on this testimony, Ittner was reasonably on notice of possible damages that Smith would claim at the restitution hearing. Second, the record reflects that, at the restitution hearing, the court asked Ittner twice if he had any questions for Smith or comments for the court. Instead of disputing or challenging Smith's claimed losses, Ittner took both opportunities to describe his own damages, disagree with the court's July 2023 judgment, and dispute who caused the April 2023 traffic accident. "A defendant has a due process right to explain, argue, and rebut any information presented at sentencing." *Simpson*, ¶ 14. The record shows that Ittner was afforded all process due under the

10

circumstances; the fact that he did not seize the opportunity does not mean he was denied due process, nor does it undermine the fairness of the restitution proceedings.

¶24 As for Ittner's claim that the Municipal Court "suppressed" Smith's "attempt to admit his own fault" and thereby denied Ittner the ability to contest causation of damages, the record does not support Ittner's characterization. First, Ittner was able to, and did, argue that Smith's "aggressive driving" and "not letting him in" to the lane was the "actual cause" of the accident and damages. Second, Smith did not admit or attempt to admit fault at the sentencing/restitution hearing. Instead, Smith doubled-down on his trial testimony—elaborating on why he was properly in the turn lane when Ittner entered it unsafely and crashed into his trailer. The court curtailed Smith's impromptu musings, stating it had already rendered a decision regarding the accident and would not revisit it at sentencing. Once liability is established, the sentencing court need not relitigate fault but must determine whether the claimed losses bear a causal connection to the offense.

¶25 Moreover, the court did not need direct testimony regarding causation of damages— it could find the "requisite causal nexus . . . by implication from proof of the elements" of Ittner's previously-adjudicated criminal conduct. *State v. Pierre*, 2020 MT 160, ¶ 13, 400 Mont. 283, 466 P.3d 494. Contrary to Ittner's characterizations, Smith did not admit fault and the court did not deny Ittner an opportunity to rebut or refute Smith's restitution claims.

¶26 Ittner received all process due at sentencing. The Municipal Court's restitution award was based on substantial evidence and not erroneous. The District Court's October 2024 judgment affirming the Municipal Court is affirmed.

11

¶27    We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE