DA 13-0447

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 89

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BENJAMIN WILLIAM ARAGON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-224
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jack E. Sands; Sands Law Office; Billings, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

      Scott Twito, Yellowstone County Attorney; Billings, Montana

Submitted on Briefs: February 19, 2014
Decided: April 2, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Benjamin Aragon (Aragon) appeals the order of the Thirteenth Judicial District Court, Yellowstone County, upholding the Justice Court's order imposing restitution of $1,910.86 following his guilty plea for driving under the influence of alcohol and reckless driving, both misdemeanors.

¶2 We reverse and address the following issue:

¶3 *Did the District Court err by affirming the Justice Court's imposition of restitution?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On August 24, 2012, while driving under the influence of alcohol in Billings, Aragon drove off the road and collided with Barbara Turcotte's (Turcotte) garage. Aragon cooperated with law enforcement and admitted responsibility for the accident. Aragon was initially charged with misdemeanor DUI in Justice Court. The State subsequently charged Aragon with criminal endangerment, a felony, dismissing the charge in Justice Court and re-filing with the new charge in District Court. Aragon agreed to a plea bargain whereby he would plead guilty to DUI and reckless driving, both misdemeanors. Because the felony charge was dropped under the agreement, the State dismissed the charge in District Court and re-filed misdemeanor charges in Justice Court.

¶5 On February 28, 2013, Aragon pled guilty in Justice Court to DUI and reckless driving, second offense. That same day, the court sentenced him to six months in jail, with all but seven days suspended, along with a $1,000 fine and court charges, for the DUI offense. The court sentenced him to six months in jail, all suspended, along with a

2

$300 fine and court charges, for the reckless driving offense, to run concurrently with his DUI sentence. The State requested restitution for Turcotte's property damage, and informed the court that, pursuant to a victim's loss statement prepared for the District Court proceedings, the damage was estimated at $3,270. Aragon informed the court it was his understanding that his auto insurance had covered the damage. Consequently, a restitution hearing was scheduled for March 12, 2013, to resolve the discrepancy.

¶6 Before the restitution hearing, Turcotte wrote a letter addressed to the court explaining that she would rather Aragon perform 40 hours of community service in lieu of paying restitution to her in order to "provide service to his community to atone for his lack of judgment that night." This letter was dated March 8, 2013, but may have been delivered to the prosecutor, as it was not provided to the court until the March 12th hearing. Aragon's briefing indicates that, prior to the hearing, the State advised him "that it would not make the restitution claim" in favor of Aragon performing community service. However, a citation to the record is not provided and apparently there is no record information about when this conversation occurred, whether the court was advised of the change of position, or whether Aragon advised the State at that time that he would object to community service. At the hearing, the State advised the court of Turcotte's new request and submitted her letter. Aragon objected to imposition of any community service requirement as he had already been sentenced and the hearing was only for the purpose of restitution. The State then renewed its request for imposition of restitution, and offered the victim loss statement that Turcotte had prepared while the case was

3

pending in District Court. This statement estimated the damages to be $3,270, and attached an estimate from Absolute Construction, dated September 4, 2012, showing a breakdown of $320 to fix the siding and $2,950 to repaint the entire house "to match current color." Also submitted to the court was the repair breakdown provided by Aragon's insurance company, dated September 19, 2012, indicating a total repair cost of $1,359.14. This amount included repairs to the siding, painting, and reseeding the landscaping, and Turcotte's loss statement acknowledged this amount had been paid to her by the insurance company. Turcotte was not present at the hearing.

¶7 Aragon argued that the request to repaint the entire home was not appropriate because Aragon had damaged only the garage. Although the garage was attached to the house, Aragon argued there was no evidence demonstrating why the whole house needed to be repainted, as opposed to only the garage, which is what the insurance adjuster had determined was necessary. The State offered no further information regarding the requested amount, stating it didn't "have any other information besides what's on the loss statement." The Justice Court expressed concern about the request to repaint the entire house, and stated that it "can't go with [Turcotte's] letter." Nonetheless, the court ultimately ordered that Aragon owed an additional $1,910.86 in restitution above the amount covered by his insurance.

¶8 Aragon appealed to the District Court, which reviewed the record and questions of law pursuant to § 3-10-115, MCA. The District Court upheld the restitution order, noting

4

that Turcotte was a victim who had suffered a pecuniary loss and who had submitted a signed, notarized affidavit supporting the amount of the loss. This appeal followed.

## STANDARD OF REVIEW

¶9 "The appropriate measure of restitution is a question of law, which we review for correctness." *State v. David C. Johnson*, 2011 MT 116, ¶ 13, 360 Mont. 443, 254 P.3d 578. A district court's finding of fact as to the amount of restitution is reviewed under the clearly erroneous standard. *David C. Johnson*, ¶ 13. A finding of fact is clearly erroneous if "it is not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421. Substantial evidence "is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332.

## DISCUSSION

¶10 *Did the District Court err by affirming the Justice Court's imposition of restitution?*

¶11 Aragon raises several arguments challenging the Justice Court's order of restitution. First, Aragon argues that under M. R. Evid. 901, a foundation was required to be laid before the Justice Court could accept the victim's loss statement as evidence. Second, he argues that the request for restitution was not "based upon the best evidence available under the circumstances" in violation of our holdings in *State v. O'Connor*,

2009 MT 222, ¶ 14, 351 Mont. 329, 212 P.3d 276, and *State v. Benoit*, 2002 MT 166, ¶ 29, 310 Mont. 449, 51 P.3d 495. Specifically, Aragon argues that a victim's affidavit, with no foundation or explanation, is not sufficient to meet the "best evidence" requirement. Third, Aragon argues the State failed to meet its burden of proof for a restitution award pursuant to § 26-1-401, MCA. Fourth, he argues that Turcotte's affidavit was not properly considered by the court because it contained hearsay within hearsay, and there was no evidence that it, or the attached estimates, were based on personal knowledge. Finally, Aragon argues the District Court erred by upholding the Justice Court order without the necessary "meaningful review" of the record as required by § 3-10-115, MCA.

¶12 A sentencing court is required to impose a restitution obligation on a criminal defendant if the defendant's crime resulted in a pecuniary loss to a victim. Section 46-18-201(5), MCA. The rules of evidence do not apply at sentencing. M. R. Evid. 101(c)(3); *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996). We have also held that "[n]othing in the controlling restitution statutes . . . requires a court or a victim to substantiate a restitution calculation with documentation." *State v. McMaster*, 2008 MT 268, ¶ 29, 345 Mont. 172, 190 P.3d 302. However, a defendant has a due process right to "explain, argue, and rebut any information" presented at sentencing. *State v. Roedel*, 2007 MT 291, ¶ 65, 339 Mont. 489, 171 P.3d 694.

¶13 Because the rules of evidence did not apply to the restitution hearing, and the restitution request was not required to be supported by additional documentation, we

6

reject Aragon's arguments on these issues. We also reject Aragon's argument that the request was not based on the "best evidence available," as our prior holdings on this issue are not applicable here. The cases upon which Aragon relies involved losses that were not capable of being determined with certainty. *See Benoit*, ¶¶ 5, 30 (employee pled guilty to theft from employer through falsely voided transactions and inappropriately discounted sales); *O'Connor*, ¶¶ 4, 16 (employee pled *nolo contendre* to theft for falsifying merchandise returns). In these cases it was not possible to determine the exact amount of the losses, but we upheld the awards of restitution because "the losses were calculated by use of reasonable methods based on the best evidence available under the circumstances." *Benoit*, ¶ 29 (employer calculated losses by estimating the average void transactions and discount sales of other employees and subtracting from the amounts processed by defendant); *see also O'Connor*, ¶ 16 (employer calculated loss by analyzing each questionable return and excluding returns processed while defendant was not on shift). Here, there is no contention that the extent of the property damage is incapable of being determined with certainty. Rather, the dispute is about the difference between Aragon's insurance company's estimate of the damage and Turcotte's estimate.

¶14 We have upheld awards of restitution where the only evidence in the record was the victim's affidavit or testimony regarding the amount of pecuniary loss. *See State v. Kuykendall*, 2006 MT 110, 332 Mont. 180, 136 P.3d 983; *State v. Charley Johnson*, 2011

MT 286, 362 Mont. 473, 265 P.3d 638.[1]  However, while a victim's affidavit or her testimony may be sufficient, if credited by the court, to support an award of restitution, we have also rejected restitution where the evidence before the court was insufficient to support the amount awarded. *State v. Coluccio*, 2009 MT 273, ¶ 45, 352 Mont. 122, 214 P.3d 1282 (overruled on other grounds by *State v. Kirn*, 2012 MT 69, ¶ 8, 364 Mont. 356, 274 P.3d 746) (assumptions and speculative calculations offered in victim's testimony were "insufficient information upon which" to base a restitution award); *State v. Brown*, 263 Mont. 223, 226, 867 P.2d 1098, 1100 (1994) (superseded by statute on other grounds as stated in *Kuykendall*, ¶ 11) (an estimated $150,000 in medical expenses for seriously injured victim and an estimated loss based solely on wage earned by another victim prior to her death were "minimal assertions" insufficient to support award).  The Dissent characterizes the issue as one of causation and relies on restitution cases where either the causal connection to the offense or the definition of "victim" was challenged.  Dissent, ¶¶ 24, 32 (citing *State v. LaTray*, 2000 MT 262, ¶¶ 21-22, 302 Mont. 11, 11 P.3d 116 (challenge to whether towing and ambulance services were "direct victims"); *Jent*, ¶ 18 (challenge to causal connection between assault and victim's later suicide attempt)).  Neither of these issues is central here, as the parties agree that Turcotte is a victim of Aragon's offense and that her damages constitute a pecuniary loss causally connected to

---

[1] It is notable in these cases that the defendant either failed to object to the amount or reasonableness of restitution, or there was no contrary evidence in the record. *Kuykendall*, ¶¶ 7, 13 (only evidence in record was victim's testimony and statement in PSI, and defendant was contesting only technical statutory requirements); *Charley Johnson*, ¶ 14 (defendant did not object to restitution when it was discussed and imposed at hearing); *State v. Schmidt*, 2009 MT 450, ¶ 75, 354 Mont. 280, 224 P.3d 618 (defendant did not object to amount or calculation of restitution, and had admitted that restitution was appropriate).

the offense. The specific issue raised is whether the State met its burden of proof as to the correct amount of those damages.

¶15 The Dissent argues that Aragon never claimed the evidence was insufficient to support the awarded restitution or that the requested amount was an "unreasonable cost of completing the repairs," Dissent, ¶ 28, and implies that this Court "devise[s] evidentiary theories that the defendant himself failed to develop," Dissent, ¶ 30. Although not with these words, the arguments Aragon made to the Justice Court and to this Court encompass the reasonable necessity of repainting the entire house and whether there was sufficient proof of the extent of the damages in light of the conflicting estimates. Aragon argued that the only damage he caused was to Turcotte's garage, that the insurance coverage had compensated Turcotte, and that he was aware of nothing indicating the entire house needed to be repainted. The restitution hearing was set up to resolve this issue. In his brief to this Court, Aragon argues that

> [n]o explanation was provided of why Aragon should be expected to repaint the victim's house when he had merely damaged the garage. . . . The affidavit showed that Aragon's insurance company had adjusted and paid for the damage to the victim's house; there was no indication that it inadequately repaired the damage.

Aragon's arguments incorporate the contention that the higher estimated cost was not reasonably necessary or sufficiently proven.

¶16 Restitution "engrafts a civil remedy onto a criminal statute, creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender." *State v. Brownback*, 2010 MT 96, ¶ 19, 356 Mont. 190, 232 P.3d 385 (citation omitted).

9

As a pecuniary loss is defined to be those damages that would be recoverable in a civil action, § 46-18-243(1)(a), MCA, there must be a preponderance of the evidence supporting the restitution award. *See State v. Hilgers*, 1999 MT 284, ¶ 4, 297 Mont. 23, 989 P.2d 866; § 26-1-403(1), MCA. In addition to the due process right to explain or rebut any information presented at the hearing, *Roedel*, ¶ 65, the defendant may assert any defense to a request for restitution "that the [defendant] could raise in a civil action for the loss for which the victim seeks compensation," § 46-18-244(2), MCA. Presented with the differing estimates, the court was required to make a determination as to what amount of restitution was supported by a preponderance of the evidence.

¶17 "The credibility of witnesses and the weight to be given their testimony are determined by the trier of fact, whose resolution of disputed questions of fact and credibility will not be disturbed on appeal." *Hilgers*, ¶ 12. This is logical because "[t]he trial court is in the best position to judge the credibility and demeanor of witnesses and their testimony." *Langford v. State*, 2013 MT 265, ¶ 17, 372 Mont. 14, 309 P.3d 993 (citing *State v. Lally*, 2008 MT 452, ¶ 24, 348 Mont. 59, 199 P.3d 818). However, the sentencing court here did not judge the credibility or demeanor of witnesses or their testimony, as there were none. Rather, the court was presented only with two estimates with significantly differing amounts, entirely devoid of context or explanation about the difference between the two.

¶18 The insurance adjuster's estimate detailed specific repairs to the siding, masonry, trim, drywall, and landscaping, as well as for painting. The adjuster estimated there was

approximately $1,100 in physical damage, and only $240 necessary for painting. Turcotte's estimate listed only repairs for siding and trim, with a total cost of $320, along with $2,950 to "repaint 2,500 SQ feet of home to match current color." The Justice Court itself expressed concern over the request for repainting the entire house absent any explanation of why it was necessary. The victim was not present to explain this request or to be cross-examined by the defendant about the necessity of repainting the entire house when only the garage had been damaged.

¶19    It is notable that the Absolute Construction estimate for repainting the entirety of the house was completed some two weeks before the insurance adjustment was completed. The Dissent assumes that the painting of the home was necessary to match the repaired garage, Dissent, ¶ 30, but there is no evidence that, once repaired, the garage would not or did not match the house. For this reason, we cannot conclude there is substantial evidence to support the higher amount of restitution. A reasonable mind could not conclude, solely from the two estimates, that one was more appropriate than the other.

¶20    We do not depart from our prior holdings that a victim's sworn affidavit explaining the amount of loss is ordinarily sufficient to support an order of restitution. *See Jent*, ¶ 21 (concluding substantial evidence supported the restitution obligation when "the District Court considered [the victim's affidavit of loss], as permitted by § 46-18-242, MCA[, and n]o evidence was presented that would dispute the accuracy or correctness of the amount[s] . . . set forth in the affidavit."). Nor do we depart from our

11

prior cases holding that documentation supporting the claimed loss is not generally required.  *See McMaster*, ¶ 29.  However, we conclude that substantial evidence does not support the award of restitution here, where the evidence before the court is conflicting and no other testimony or evidence was available to be examined or reviewed as to the discrepancy.

¶21     When an order for restitution is improperly entered upon legal error, we generally remand to the trial court for correct application of §§ 46-18-241 through -249, MCA.  *See State v. Hunt*, 2009 MT 265, ¶ 23, 352 Mont. 70, 214 P.3d 1234; *State v. Ariegwe*, 2007 MT 204, ¶ 182, 338 Mont. 442, 167 P.3d 815; *see also State v. Heafner*, 2010 MT 87, ¶¶ 11-13, 356 Mont. 128, 231 P.3d 1087.  Similarly, we have remanded in cases where restitution is unsupported by substantial evidence "to determine the correct amount of restitution to be imposed in accord with this opinion and applicable law."  *Coluccio*, ¶ 46.  Therefore, we reverse the restitution award entered herein and remand this matter to the Justice Court for a determination of the proper amount of restitution.

¶22     Reversed and remanded for further proceedings consistent herewith.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT

12

Justice Laurie McKinnon, dissenting.

¶23 I respectfully dissent from the Court's decision. I believe the Court has misstated the issue in this case. Moreover, I believe that the evidence in the record supports the Justice Court's restitution award and that the Court misapplies the restitution statutes in reaching a contrary conclusion.

¶24 The Court asserts that Aragon has not challenged the "causal connection" between his offense and Turcotte's restitution claim. Opinion, ¶ 14. This assertion is perplexing, given that the Court acknowledges in the very next paragraph that "Aragon argued that the only damage he *caused* was to Turcotte's garage, that the insurance coverage had compensated Turcotte, and that he was aware of nothing indicating the entire house needed to be repainted." Opinion, ¶ 15 (emphasis added). The existence of a causal relationship between Aragon's criminal conduct and Turcotte's request to have her entire house repainted is the *only* issue Aragon raised—albeit, as the Court points out, "not with these [exact] words." Opinion, ¶ 15. Unfortunately, in addressing and resolving this case based on an evidentiary matter that Aragon did *not* raise, the Court has fundamentally increased the burden on crime victims to establish their right to restitution.

¶25 At the hearing held February 28, 2013, Aragon entered pleas of guilty to reckless driving and to driving under the influence of alcohol. The Justice Court then proceeded with sentencing. Near the end of the proceeding, the prosecutor indicated that the State was requesting $3,270.00 in restitution. As support for this amount, the prosecutor referred to the Victim's Affidavit in Support of Property Financial Loss, which Turcotte

13

had submitted three months earlier. Aragon's only objection to the requested restitution was: "I thought [my automobile] insurance covered that. . . . [W]hat I understood was that my insurance . . . paid for the damages." The prosecutor explained that the insurance had covered "part" of the loss, and the parties agreed that a restitution hearing would be needed to determine how much of Turcotte's loss remained unpaid.

¶26     At the March 12, 2013 restitution hearing, Aragon's counsel argued as follows:

> [Aragon's] insurance company went out, assessed the valuation, did all the repairs that were required of it, and the garage was completely repaired. And it was all covered with his insurance. Now, in her loss statement, she's asked their entire house be repainted. And, you know, that's not part of restitution for damage to a garage, even though the house -- the garage was attached to the house. So, restitution has been made. It's been made in full in this case. And there's no reason that he should be responsible for repainting a house.

The Justice Court rejected this argument. The court concluded that Aragon was liable for the full amount of restitution set forth in Turcotte's affidavit (i.e., $3,270.00). The court found that Aragon's insurer had "paid part of the $3,2[70]" and that Aragon, therefore, owed the difference (i.e., $1,910.86).[1]

¶27     Significantly, Aragon never argued that, if his restitution obligation did encompass repainting Turcotte's entire house, there was insufficient evidence supporting an award of $1,910.86 for that purpose. And, in fact, there is sufficient evidence in the record. As

---

[1] It is important to clarify that when the Justice Court stated that it "can't go with [Turcotte's] letter," *see* Opinion, ¶ 7, the court was not referring to Turcotte's restitution affidavit. Rather, the court was referring to a March 8, 2013 letter Turcotte had sent the court indicating that she would be satisfied if Aragon did 40 hours of community service in lieu of restitution. Aragon objected to this disposition, and the Justice Court agreed with him that community service would not be appropriate in lieu of restitution.

14

noted, Turcotte submitted an affidavit (pursuant to § 46-18-242, MCA) in which she described her pecuniary loss and the replacement value of that loss.[2] According to the affidavit, the "[f]ull replacement value / repair cost of property taken, destroyed, harmed, or otherwise devalued" is $3,270.00. Although she was not required to substantiate this amount with documentation, *see State v. McMaster*, 2008 MT 268, ¶¶ 27, 29, 345 Mont. 172, 190 P.3d 302, Turcotte nevertheless attached a September 4, 2012 estimate from Absolute Construction in the amount of $3,270.00, which included the cost of repainting 2,500 square feet of the house "to match current color." The parties agreed that Aragon's insurance company had covered repairs to the garage itself in the amount of $1,359.14. Thus, Turcotte sought merely the difference between the Absolute Construction bid and what the insurance company had already covered—equaling $1,910.86—to cover repainting the remainder of the house.

¶28 Accordingly, the Court's suggestion that this case is about "conflicting" repair estimates for which there is no "context or explanation," Opinion, ¶¶ 15-20, is incorrect. No one raised the questions that the Court now poses at ¶ 18 of the Opinion regarding each line item of the two estimates. The parties and the Justice Court understood why there was a difference between the Absolute Construction estimate and the insurance adjuster's estimate: the former included the cost of repainting the entire house, not just the garage. Aragon never argued that the Justice Court needed to choose one estimate over the other. He never claimed that the evidence before the court was insufficient to

---

[2] In this regard, I agree with the Court's rejection of Aragon's arguments regarding the adequacy of Turcotte's affidavit. Opinion, ¶ 13.

establish the cost of repainting the entire house. And he never claimed that $1,910.86 was an unreasonable cost of completing the repairs that Turcotte was claiming.

¶29 What Aragon argued, rather, was that the remaining repairs—repainting the rest of the house—were simply "not part of restitution for damage to a garage." The substance of his argument is clearly that the damages caused by Aragon's offenses did not include the house. *See State v. Jent*, 2013 MT 93, ¶ 13, 369 Mont. 468, 299 P.3d 332 ("a causal relation between the offender's criminal conduct and the pecuniary loss is the touchstone for determining whether a person or entity is a victim entitled to restitution"). Hence, the Court's attempt to reframe the issue as whether there is sufficient evidence supporting the *amount* of the restitution award is unpersuasive. The issue Aragon raised is whether his restitution obligation extended beyond repairs to the garage to include repairs to other parts of the house—which everyone understood would cost him an additional $1,910.86 in restitution. More specifically, the issue is whether the cost of repainting the remainder of Turcotte's house is part of "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon's] criminal conduct." Section 46-18-243(1)(b), MCA. The Justice Court found that it was, and I believe the evidence in the record supports this finding.

¶30 Aragon concedes he unlawfully drove his vehicle recklessly and while under the influence of alcohol. Aragon concedes he drove his vehicle off the road and crashed into Turcotte's garage. Aragon concedes he thereby caused damage to the structure. The notion that the damage could not have extended beyond the garage is wholly implausible,

16

given that the garage was physically attached to Turcotte's house. Absolute Construction estimated the repairs at $3,270.00. This included repainting the house "to match current color." Obviously, Turcotte wanted the color of her house to match the color of the repainted garage. The Court opines that there may not have been any need to repaint the rest of the house to match the color of the garage. Opinion, ¶ 19. But even if this were true, it was Aragon's responsibility to make this argument at the restitution hearing and to present such evidence refuting Turcotte's claim—neither of which he did, or even attempted to do. It is not this Court's prerogative to devise evidentiary theories that the defendant himself failed to develop. *State v. Whalen*, 2013 MT 26, ¶ 32, 368 Mont. 354, 295 P.3d 1055; *Citizens for Balanced Use v. Maurier*, 2013 MT 166, ¶ 15, 370 Mont. 410, 303 P.3d 794. Nor was it Turcotte's or the prosecutor's responsibility to produce any documentation other than her restitution affidavit. *McMaster*, ¶¶ 27, 29.

¶31 "In reviewing findings of fact, the question is not whether there is evidence to support *different* findings, but whether substantial evidence supports the findings actually made." *Knowles v. State ex rel. Lindeen*, 2009 MT 415, ¶ 21, 353 Mont. 507, 222 P.3d 595 (emphasis in original); *accord In re K.J.B.*, 2007 MT 216, ¶ 23, 339 Mont. 28, 168 P.3d 629. We thus have explained that

> [a] finding . . . is not clearly erroneous simply because there is evidence in the record supporting a different finding. Rather . . . , a finding is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made.

17

*State v. Lally*, 2008 MT 452, ¶ 22, 348 Mont. 59, 199 P.3d 818. Here, the *only* evidence presented to the Justice Court bearing on the issue of restitution—namely, Aragon's admissions forming the basis of his guilty pleas, and Turcotte's affidavit with the two gratuitously attached estimates—established the following: (1) that Aragon crashed into Turcotte's garage, (2) that the garage was physically connected to Turcotte's house, (3) that Turcotte's monetary loss totaled $3,270.00, (4) that Aragon's insurer provided $1,359.14, and (5) that it would cost an additional $1,910.86 to complete the repairs.

¶32 The Justice Court's finding—that "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon's] criminal conduct," § 46-18-243(1)(b), MCA, included the cost of repainting the entire house—is supported by our precedents. In *State v. LaTray*, 2000 MT 262, 302 Mont. 11, 11 P.3d 116, we held that towing and ambulance services, which had responded to the scene of the defendant's offense, were entitled to restitution. We reasoned that "LaTray's criminal acts created a situation in which ambulance and towing services were reasonably necessary for public safety or for the safety of LaTray himself." *LaTray*, ¶ 22. Likewise, in *Jent*, where the defendant had pleaded guilty to assaulting his wife, we held that his restitution liability extended to the medical expenses associated with his wife's suicide attempt. We explained that "Jent's conduct created a situation which resulted in medical expenses arising from the compromised mental health of his victim." *Jent*, ¶ 18.

¶33 As we stated in *Jent*, ¶ 12, "restitution is not to be limited by the definition of the offense or to only those injuries arising as a 'direct' result of the offense." Here, Aragon argued that repainting the entire house is "not part of restitution for damage to a garage."

18

The evidence before the court, however, supported a finding that even if repainting the entire house was not a "direct" result of Aragon's offenses, it was an indirect result of those offenses: but for his crashing into the garage, there would have been no need to repaint the garage and, so as to match color, the rest of the house to which the garage is attached. Certainly, Aragon could have attempted to refute this connection by presenting evidence that there was no need to repaint the entire house or that the need to repaint the entire house was too "attenuated" from his offense. *See Jent*, ¶ 13. But Aragon did not do so. Notably absent from the Justice Court record is any evidence presented by Aragon that any part of Turcotte's restitution claim should be bifurcated from the total amount that she stated under oath are her damages.

¶34 I disagree with the Court's suggestions that Turcotte should have been "present to explain" her request and that, because of her absence, Aragon was denied the ability to cross-examine her. Opinion, ¶ 18. The only evidence Turcotte was required to present, and did present, is an affidavit describing her pecuniary loss and the replacement value in dollars of the loss. Section 46-18-242, MCA. We have effectively punished Turcotte for attaching the estimates from Absolute Construction and Aragon's insurer by holding that these documents—which the statute does not require a victim to provide in the first place, *McMaster*, ¶¶ 27, 29—somehow created a "conflict" that she should have been "present to explain." The fact that "no other testimony or evidence was available to be examined or reviewed" by the Justice Court, Opinion, ¶ 20, is entirely Aragon's responsibility, and he cannot now invoke that omission as a basis for reversing the Justice Court's restitution

19

award. Aragon had notice of the restitution hearing and notice of the affidavit, and he could have subpoenaed Turcotte or other witnesses in order to refute the amount of her claim. Aragon failed, however, to produce any testimony or even to ask that the matter be continued to secure the necessary evidence. The Court has cited no law requiring Turcotte or the prosecution to produce any more evidence than they did.

¶35 In the absence of any evidence disputing Turcotte's claim or a request for time to secure the same, the Justice Court was constrained to make a decision based on the evidence before it. In determining that Turcotte should be paid "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon's] criminal conduct," § 46-18-243(1)(b), MCA, the Justice Court properly followed our precedent that a victim's sworn affidavit explaining the amount of loss is sufficient to support an order of restitution. *McMaster*, ¶ 27; *Jent*, ¶ 21. The practical result of today's decision will be (1) to discourage victims from attaching documentation to affidavits of pecuniary loss for fear that this Court might perceive a "conflict" in the evidence or (2) to require the State to produce evidence and testimony beyond the victim's affidavit as a precaution against the defendant's raising an argument, not supported by evidence, that the restitution award is unreasonable. Because we have reviewed the victim's invoices in this matter, which were not even necessary, and determined ourselves that the amount or necessity of repainting her house seems unreasonable, we have altered the rules to be followed in restitution proceedings. The

20

victim's affidavit is sufficient evidence to validate her claim, in the absence of evidence to the contrary.

¶36    I dissent.

_____
Justice