FILED

April 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0680

DA 13-0680

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 104N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

MARX DENNIS KEMMER,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 13-134
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Johnna K. Baffa, Van de Wetering & Baffa, P.C., Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

Kirsten Pabst, Missoula County Attorney, Jordan Kilby, Deputy County
Attorney, Missoula, Montana

Submitted on Briefs:  March 18, 2015
Decided:  April 14, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Marx Dennis Kemmer appeals from a restitution order of the Fourth Judicial District Court, Missoula County, directing him to pay $22,250 for the replacement value of stolen jewelry. We affirm.

¶3 In the early morning hours of January 17, 2013, Kemmer gave his friend Taylor DuBois a ride home after a night out. Taylor fell asleep on the couch downstairs, and Kemmer went upstairs to the master bathroom. Next to the bathroom sink, Kemmer saw a glass ring holder containing several rings. Kemmer also saw a jewelry box and some necklaces hanging by the bathroom mirror. The jewelry belonged to Taylor's mother, Tammy DuBois. Kemmer owed a friend $90 and decided to take two of the rings—a diamond solitaire and a ring with leaf-shaped details—and sell them in order to pay his friend.

¶4 Later that day, Kemmer met up with another friend who also had some gold rings to sell. The two went to Adair Jewelers, where Jim Adair paid them $5,047 for approximately ten rings. Adair paid about $4,500 for the diamond solitaire and about $550 for the other items. On January 18, Taylor noticed that some of her mother's jewelry was missing. She confronted Kemmer, and the two went to Adair Jewelers.

Adair had already resold the items, which could not be recovered. Taylor reported the theft to the Missoula County Sheriff's Department. Tammy later reported that she was missing several other items of jewelry, including a diamond and sapphire wedding ring, an antique gold promise ring, a gold band, a marquis-cut diamond ring, and a gold serpentine necklace. Kemmer admitted taking the two rings and pled guilty to felony theft, although he denied taking the other items.

¶5 Tammy submitted an affidavit of pecuniary loss, estimating the replacement value of the diamond solitaire ring at $20,000 and the other items at $9,550. A restitution hearing was held on July 12, 2013. Tammy testified that she did not have documentation for her jewelry because it had all been purchased some time ago, but she believed her diamond solitaire was between one and a half and two carats, with a color grade of F. Tim Lande, who purchased the ring, testified that he bought it online from Costco ten to fifteen years ago and paid in the range of $10,800 to $12,000. Adair testified that he remembered purchasing the diamond from Kemmer. He said the diamond was somewhat larger than one and a half carats and an H or I grade in color, which is slightly lower than the grade testified to by Tammy. Adair explained that depending on which gemological society issued the certification, color grades could vary somewhat. Adair said that a similar diamond would be available for purchase online for $13,400, which he said was "as cheap as you're going to be able to find a diamond like that. Period." Adair testified that due to retail costs and the addition of a setting, he would sell a ring containing a similar diamond for $15,000 to $16,000. He explained that diamonds could be sold more cheaply online because the customer would not be able to examine the particular

3

diamond, but would instead pay for an unseen diamond meeting a given set of specifications.

¶6 The District Court ordered restitution for the diamond solitaire in the amount of $15,500, based on Adair's testimony about what a replacement would cost in his store. Finding that Tammy had overestimated the value of the diamond solitaire by about one-fourth, the District Court deducted a similar amount from the replacement values she had provided for the remaining items. Pursuant to this calculation, the District Court ordered restitution in the total amount of $22,250. On appeal, Kemmer argues the District Court should have accepted Adair's lower estimated replacement cost of $13,400, plus the cost of a setting.

¶7 We review findings of fact as to the amount of restitution for clear error. *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.2d 841. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us firmly convinced that a mistake has been made. *Aragon*, ¶ 9. Restitution allows the victim of a crime to avoid the additional procedural step of pursuing civil recovery against an offender. *State v. Jent*, 2013 MT 93, ¶ 12, 369 Mont. 468, 299 P.3d 332. A victim is entitled to receive the full replacement cost of property taken, harmed, or destroyed as a result of the offender's criminal conduct. *Jent*, ¶ 13. A victim's affidavit describing her pecuniary loss is ordinarily sufficient to support an order of restitution, and documentation supporting the claimed loss is not generally required. *Aragon*, ¶ 20. When the trial court is presented with differing estimates of the victim's pecuniary loss, it must make a determination as to

what amount of restitution is supported by a preponderance of the evidence. *Aragon*, ¶ 16. In reviewing that determination, we must bear in mind that the trial court is in the best position to assess the credibility and demeanor of witnesses. *Aragon*, ¶ 17. The trial court's resolution of disputed questions of fact and credibility will not be disturbed on appeal. *Aragon*, ¶ 17.

¶8 Here, the District Court was presented with varying estimates of the replacement cost of the diamond solitaire. Tammy testified that she believed it would cost $20,000 to purchase a similar ring; Adair testified that depending on where the ring was purchased, it could cost from $13,400 to $16,000; and Lande testified that he originally paid $10,800 to $12,000. The District Court considered this range of values and found Adair's testimony as a certified gemologist to be the most credible. Accordingly, the District Court adopted a value of $15,500 for the ring. Given that estimates of the ring's replacement value ranged from $13,400 to $20,000, this value was on the conservative side and well-supported by the evidence presented. Kemmer cites no authority for the proposition that Tammy is required to purchase a replacement ring online, sight unseen, or that the District Court was obligated to adopt a replacement value that was, according to the testimony of Adair, "as cheap as you're going to be able to find a diamond like that."

¶9 The testimony also showed that Adair had purchased additional items of jewelry from Kemmer, but Adair did not specifically recollect them and found them generally unremarkable. Thus, Tammy's affidavit was the only evidence of the replacement value of her other items of jewelry. This alone was sufficient to support an order of restitution.

5

*Aragon*, ¶ 20. The District Court, however, also considered the weight to be given Tammy's evidence in light of the fact that she is not a certified gemologist. The District Court made a reasonable inference that the actual value of the items was likely to be somewhat less than that estimated by Tammy and settled on a replacement value of $6,750. This took into account Tammy's affidavit of pecuniary loss, her testimony describing the items, and Adair's testimony as a certified gemologist. The restitution order of $22,250 was supported by substantial evidence.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of relevant standards of review. The District Court's interpretation and application of the law were correct, and its findings of fact were not clearly erroneous.

¶11 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE