JUSTICE McKINNON,
dissenting.
¶19 McClelland argues that he should have been permitted to examine the mental health treatment plan form to evaluate Dr. Lindner’s assessment that 100% of the victim’s treatment was related to McClelland’s crime. McClelland claimed, without support, that the victim’s counseling could not be attributable entirely to his conduct because the victim had been previously abused. McClelland claimed, without support, that because the victim had a history of prior abuse there was thus created a corresponding due process right for McClelland, not otherwise existing when prior abuse is absent, to examine records pertaining to the victim’s mental health. McClelland insists on disclosure of the victim’s mental health treatment plan even when there was testimony, without objection, at four different times during the restitution hearing that Dr. Lindner indicated the victim’s counseling was 100% attributable to McClelland’s assault. The Court’s decision fails to appreciate the implications of McClelland’s arguments for victims of repeated domestic violence; fails to acknowledge the complete absence of any evidence supporting McClelland’s speculation that the victim’s counseling was not 100% attributable to his conduct; and, most importantly, fails to recognize that § 53-9-133, MCA, allows the court to “set as a condition of probation the payment to the state of an amount equal to any benefits paid by the office [of victims services] to a victim or a victim’s dependents.” (Emphasis supplied.) Finally, the Court fails to even mention the provisions of § 53-9-107, MCA, which establishes records of the office of victim services are confidential and exempt from disclosure, except where the proponent of disclosure has shown a compelling interest.
¶20 The Legislature in 1977 created the Crime Victims Compensation Program (CVCP) “to provide a method of compensating those persons within the state who are innocent victims of criminal acts...” Section *170 53-9-102, MCA. The CVCP is statutorily authorized to “determine all matters relating to claims for compensation,” and the program is authorized to adopt rules to implement the compensation program. Section 53-9-104(l)(c), MCA; see Admin. R. M. 23.15.10, et seq . The Legislature defined CVCP as a victim “to the extent that it has reimbursed a victim for pecuniary loss.” Section 46-18-243(2)(a)(v), MCA. The CVCP is designed to reimburse crime victims timely and completely and, as explained by Matson, award benefits to victims based on CVCP’s internal claims processing without requiring the victim to wait until the criminal defendant is sentenced. To that end, and in recognition of the CVCP’s right of subrogation as a victim, the court may set as a condition of probation the payment to the State of “an amount equal to any benefits” paid by the CVCP. Section 53-9-133(1), MCA.
¶21 The Court’s decision undermines the operation of these statutory provisions because it ignores that restitution here is being claimed by CVCP and not the actual victim of McClelland’s assault. The statutory framework does not require that CVCP substantiate or document the loss sustained by the person to whom the CVCP awards benefits. If the Legislature had intended CVCP to substantiate its administrative decision to award benefits, the Legislature could have expressly stated as much. Instead, the Legislature gave the CVCP broad administrative authority to “determine all matters relating to claims for compensation.” Section 53-9-104(l)(c), MCA. In authorizing the program, the Legislature empowered CVCP to obtain reports and data pertaining to health care information and confidential criminal justice information. Section 53-9-104(2)(a), (b), MCA. CVCP has the authority to subpoena witnesses and other prospective evidence, administer oaths or affirmations, and to conduct hearings and receive evidence. Section 53-9-104(2)(c), MCA. These statutory provisions do not require the CVCP to justify its administrative decision in awarding benefits to a crime victim.
¶22 CVCP awarded the victim $845.24 for mental health counseling and submitted an affidavit “that specifically describe[d] [CVCP’s] loss and the replacement value in dollars of the loss...” as required by § 46-18-242, MCA. It is undisputed that CVCP is a victim and there was no further requirement for CVCP to submit additional documentation of its loss. State v. Aragon, 2014 MT 89, ¶ 12, 374 Mont. 391, 321 P.3d 841. We have explained that a defendant has a due process right to “explain, argue, and rebut any information” presented at sentencing, State v. Roedel, 2007 MT 291, ¶ 65, 339 Mont. 489, 171 P.3d 694, but a court does not err in relying upon testimony and evidence presented *171 by the victim when a defendant fails to present any evidence, as here, which rebuts the victim’s testimony as to pecuniary loss. State v. Dodson, 2011 MT 302, ¶ 14, 363 Mont. 63, 265 P.3d 1254.
¶23 The State produced testimony explaining the CVCP’s process for determining victim eligibility and the amount of compensation. The internal administrative process for evaluating a claim tracks the statutory provisions of §§ 53-9-125 through -128, MCA. Consistent with its authority to “prescribe forms for applications for compensation,” the CVCP generated the mental health treatment plan form to assist in evaluating a victim’s claim. Section 53-9-104(l)(b), MCA. Matson testified that, in addition to having the provider indicate diagnostic codes and a diagnosis, the provider must indicate on the form the duration of counseling, whether the counseling is directly related to the crime, and any previous history of trauma. Thus, the mental health treatment plan form, as the name suggests, clearly contained confidential information pertaining to the victim which McClelland was not entitled to examine.
¶24 The Court’s analysis regarding in camera review of the mental health treatment plan form is therefore misplaced and contravenes clear statutory provisions setting forth the procedure for disclosure of records of the CVCP. Section 53-9-107(3)(a), MCA, specifically exempts from public disclosure records of the office that contain “information of a personal nature, such as personal, medical, or similar information,” unless there is “clear and convincing evidence” that the public interest requires disclosure in the particular instance. Furthermore, “[t]he party seeking disclosure has the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy.” Section 53-9-107(3)(b), MCA, similarly provides that a criminal defendant may not examine CVCP records containing a victim’s medical information which are prohibited from disclosure by federal law and regulations. The Justice Court indicated that pursuant to the Health Insurance Portability and Accountability Act (HIPPA), 42 U.S.C. § 1320d, et seq., where there is no waiver from the victim, prohibited disclosure of the contents of the mental health treatment plan form to McClelland. McClelland presented no evidence or even argument demonstrating a compelling interest for disclosure. In my opinion, the Justice Court got it right.
¶25 Accordingly, the Court’s observation that “[McClelland] does not explain how the fact of prior domestic violence contradicted the counselor’s conclusion about the victim’s current treatment, and he did not produce any evidence to support this speculation,” Opinion, ¶ 12, is in direct contravention with the above statutory provisions requiring *172 that a criminal defendant bear the burden of demonstrating by clear and convincing evidence that disclosure of CVCP records is necessary to protect a compelling interest. The Justice Court explained to defense counsel that she was not relying on any information contained in the form other than the amount of counseling attributable to McClelland’s actions. Matson and Eslick had already explained, without objection from McClelland, that services provided to the victim were 100% related to the incident with McClelland. In consideration of this record, McClelland has failed to present any evidence which would warrant further inquiry from the court such as an in camera review.
¶26 As a final note, I feel compelled to address the underlying premise that has been set forth by McClelland, that is: if you are unfortunate enough to have a history of domestic violence the confidentiality of your health care information is somehow less worthy of protection than those without such a history. Absent nothing more than a fishing expedition on the part of McClelland’s trial counsel and with no evidence produced that even suggested relevance of the victim’s prior history, we have ordered an in camera review. The bald assertion from McClelland that testimony about a history of domestic violence “tended to show that the counseling the victim received bore some relationship to that prior incident and, thus, was not solely related to” McClelland’s offense has no support in the record. Furthermore, a claim that Dr. Lindner “contradicted herself on the disputed fact” when she indicated the victim’s counseling was 100% attributable is reckless and akin to suggesting that Dr. Lindner made “a false claim or a false statement ...in connection with any claim [and] is guilty of theft... .” Section 53-9-111, MCA. I cannotjoininthis Court’s condoning such arguments from counsel on this record. I believe our remand for an in camera review legitimizes an inappropriate and unsubstantiated conclusion regarding victims of domestic violence. Had defense counsel put any effort at all into proving the relevance of the victim’s prior victimization, rather than conduct a fishing expedition of the state’s witnesses, resolution of this matter may have been entirely different. Defense counsel did not, and I would affirm the Justice Court, as did the District Court.
¶27 I dissent from the Court’s decision to do otherwise.